UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GREAT NORTHERN INSURANCE COMPANY, )
a/s/o Anne Davis, )
 )
      Plaintiff, ) CIVIL ACTION
  v. ) NO. 15-12955-JGD
 )
EASTERN PROPANE GAS, INC., )
 )
      Defendant. )

# MEMORANDUM OF DECISION AND ORDER
# ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

March 28, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff alleges that on January 23, 2015, the water supply line at a home owned by its insured, Anne Davis, in Gloucester, Massachusetts, froze and ruptured, causing in excess of $700,000.00 in damages at the property. The house was unoccupied at the time. Great Northern Insurance Company ("Great Northern") insured the property, and paid the property damage claim. It brings this action as the insured's subrogee against Eastern Propane Gas, Inc. ("Eastern Propane"), the entity that provided propane gas to heat the property. The Complaint sounds in negligence and breach of contract.

Eastern Propane provided liquid propane gas to the home on an automatic basis. The gas tank was empty by the time the property damage was discovered. It is Great Northern's theory that Eastern Propane either miscalculated or otherwise failed to deliver the amount of

propane necessary for the property, and the home ran out of gas. As a result, according to Great Northern, the pipes froze and ruptured, causing the damage at issue. For its part, Eastern Propane's expert will testify that first the pipes froze and burst due to weather conditions, and then the hot water continued to leak out until the propane in the tank was depleted.

This matter is presently before the court on the motion of Eastern Propane for "Summary Judgment on the Plaintiff's Action Seeking Consequential Damages" (Docket No. 32). Therein, Eastern Propane argues that even assuming Great Northern's theory is correct, and the pipes froze because the tank ran out of propane gas, it cannot be liable due to a provision in the contract it had with the homeowners. Specifically, the contract provides that "[i]n recognition that the depletion of the supply of LP gas at the Location varies with the usage demands of the Customer[s] . . . Eastern cannot and does not assume responsibility and is not accountable for the exhaustion of the LP Gas supply at the Location, or the consequences of its exhaustion, direct or indirect." Great Northern contends that the contract provision has no application to the instant case, where the customer's needs did not fluctuate, but rather Eastern Propane allegedly miscalculated or simply failed to deliver the amount of fuel that should have been delivered.

After consideration of the written and oral arguments of the parties, the motion for summary judgment is ALLOWED IN PART and DENIED IN PART. This court concludes that the breach of contract claim is barred by the above quoted provision. However, Great Northern may maintain an action against Eastern Propane for negligence in connection with calculating or delivering the proper amount of fuel that was needed at the home.

## II. STATEMENT OF FACTS[1]

### The Contract

This action involves a house in Gloucester, Massachusetts.  The house originally was owned by James S. Davis, who sold it to his wife Anne Davis for $1.00 on December 8, 1997.  DF ¶¶ 1, 3.  It was a summer vacation home and rarely occupied.  Pl. Mem. (Docket No. 37) at 1.  There was a caretaker hired to maintain and safeguard the property.  DF ¶ 8.

On October 25, 1999, the property owners entered into a contract with Eastern Propane entitled "Terms and Conditions of and for the Delivery and Supply of Liquified Petroleum Gas and Related Equipment and Parts" (the "Contract").  DF ¶ 4; Def. Ex. C.  The parties agree that this is the only contract at issue in this litigation, that this is the contract that governs the supply of liquefied petroleum gas ("LP") to the property, and that this is the contract on which plaintiff's breach of contract claim is based.[2]  The parties also agree that the defendant's customers had the option of having Eastern Propane automatically deliver propane gas to their property on a schedule the company established based on its calculation of amounts of gas that would be needed, or the homeowner could request specific deliveries, or there could be some

---

[1] Unless otherwise indicated, the facts are not disputed.  They are derived from the Complaint (Docket No. 1) ("Compl."), defendant East Propane's statement of "Relevant and Material Facts" included in the "Motion and Memorandum of Law of the Defendant for Summary Judgment on the Plaintiff's Action Seeking Consequential Damages" (Docket No. 32) ("DF"), the exhibits submitted by the defendant that are attached thereto ("Def. Ex."), and the exhibits attached to "Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment" (Docket No. 37) ("Pl. Ex.").  In addition, the parties make several representations in their memoranda which are undisputed, albeit lacking in citations to the record.

[2] The parties agree that the contract is applicable even though it is signed by Jim Davis.  The "Property Owner's Name" is listed as Anne/Jim Davis.  Def. Ex. C.

combination of the two.  See Pl. Mem. at 4-5.  It is undisputed that Eastern Propane was to automatically deliver gas to the Davis propery.[3]

Remarkably, the Contract makes no mention of when gas would be delivered, or of an automatic delivery schedule, or of any obligation on the part of Eastern Propane to calculate the amount of gas that would be needed.  Rather, the Contract focuses on the equipment being provided by Eastern Propane.  The only references to gas delivery in the one page document are as follows:

> The undersigned has requested Eastern Propane Gas, Inc. ("Eastern") to provide liquefied petroleum gas ("LP Gas") and the following related equipment and parts ("Equipment") to Jim Davis the Customer(s) at: 12 Mt. Locust Place Gloucoster [sic] MA ("the Location"):
> . . . .
> Eastern will or has provided the LP Gas to the Customer(s) on a sale basis, the price being that established by Eastern and prevailing on the date of sale.
> . . . .
> **In recognition that the depletion** of **the supply of LP gas at the Location varies with the usage demands of the Customer(s), and that the Customer's(s') usage demands will fluctuate in relation to the Customer's(s') fuel requirements, Eastern cannot and does not assume responsibility and is not accountable for the exhaustion of the LP Gas supply at the Location, or the consequences of its exhaustion, direct or indirect.**
>
> I/We, the undersigned Customer(s), acknowledge that I/we have read and received a copy of the foregoing terms and conditions and agree that they accurately and fully represent the contractual understandings relating to the matters referenced.

---

[3] While the plaintiff's memorandum in opposition to the motion for summary judgment indicates a theory that Eastern Propane failed to properly calculate the amount needed at the home, Pl. Mem. at 1, during oral argument, the plaintiff argued that there was evidence that the driver did not deliver the amount he was supposed to deliver.

Def. Ex. C (emphasis added). Thus, there are no references in the Contract to the automatic supply or delivery of LP gas. It is undisputed that Mr. and Mrs. Davis are sophisticated business people. DF ¶ 7. They also own a number of properties. Id. ¶ 8.

### The Incident

On or about January 23, 2015, it was discovered that the water pipes in the house had frozen and ruptured, causing significant damage. DF ¶ 1. Great Northern insured the property and paid more than $700,000.00 to repair and replace the damaged property. Pl. Mem. at 1. As a matter of law, "[w]hen an insurer pays an insured's claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss. If an insurer has paid the insured for the entire loss, it may bring an action, either in its own name or as subrogee, on behalf of the insured against a third party whose wrongful act caused the loss." Liberty Mut. Ins. Co. v. Nat'l Consol. Warehouses, Inc., 34 Mass. App. Ct. 293, 296, 609 N.E.2d 1243, 1246 (1993) (citations omitted). "A subrogee stands in the shoes of the subrogor in whose name the action is brought[,]" and "the insurer's rights by subrogation are no greater than the rights of the insured." Id. (citations omitted). In the instant case, Great Northern brought this action in its capacity as subrogee of its insured.

It is Great Northern's theory either that Eastern Propane miscalculated the amount of propane needed at the house, or the driver failed to deliver the amount he was supposed to deliver, and the tank ran dry. See note 3, supra. As a result, the heat failed, and the water pipes froze and ruptured, thereby pouring water into the house. Compl. ¶¶ 6-7. While Eastern Propane accepts this theory for purposes of the motion for summary judgment, if the case proceeds to trial East Propane's expert would refute this theory. Specifically, but without

limitation, it is Eastern Propane's theory that sufficient propane was delivered, but that the pipes froze and burst as a result of cold weather. Once the pipes burst, hot water continued to leak out of the pipes until the propane was depleted. See Pl. Supp. Resp. (Docket No. 45) at 1-2.

Great Northern alleges that "Eastern Propane has a system-wide problem with calculation and/or delivery protocols" that caused the tank to run out of gas. Pl. Mem. at 6. In support of this theory, it alleges that 22 months after the incident at issue here, on October 28, 2016, the caretaker noticed that the temperature in the house was below sixty degrees, and that the tank had run out of fuel. Id. When he called Eastern Propane, "its representative stated that its 'forecasting on our property was wrong' and that 'they would correct it.'" Id. In addition, the caretaker stated that "a second property owned by the Davis family that is supplied by Eastern Propane has run out of gas twice in the last year." Id. There is no indication in the record that the tank had run dry between 1999, when the Contract was signed, and the time when the pipes burst in January 2015.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

A.  **Summary Judgment Standard of Review**

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citation omitted)). The burden is on the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (alteration in original) (citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, 794 F. Supp. 2d at 275 (citation omitted). The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading.'" Id. at 841 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

    B.    **Contract Interpretation**

Count II of the Complaint purports to state a claim for breach of contract. In particular, Great Northern alleges therein that "Eastern agreed to deliver to the Property an adequate supply of liquid propane on an automatic basis, the amount and frequency of delivery to be determined by Eastern, in a workmanlike manner to insure that the Property had sufficient liquid propane to supply, *inter alia*, heat" and that Eastern breached this contract. Compl. ¶ 19. However, as noted above, Great Northern also alleges that the written Contract is the only contract between the parties, and the Contract does not make any reference to the automatic delivery of propane. For this reason, alone, Eastern Propane is entitled to summary judgment

on the breach of contract claim. Nevertheless, the parties have argued the motion in the context of the enforceability of the contract provision limiting Eastern Propane's liability for damages incurred as a result of the exhaustion of the gas. Therefore, the court will address that clause.

For purposes of Eastern's motion for summary judgment, it is not necessary to determine whether the limitation on consequential damages is enforceable as a matter of law.[4] Rather, it is Great Northern's position that the limitation provision does not apply here since the propane was not "exhausted" as a result of any action on the part of the customer. This interpretation, however, adds limitations that are not found in the Contract.

As noted above, the critical provision in the Contract is as follows:

> In recognition that the depletion of the supply of LP gas at the Location varies with the usage demands of the Customer(s), and that the Customer's(s') usage demands will fluctuate in relation to the Customer's(s') fuel requirements, Eastern cannot and does not assume responsibility and is not accountable for the exhaustion of the LP Gas supply at the Location, or the consequences of its exhaustion, direct or indirect.

Def. Ex. 3. It is Great Northern's contention that "[i]f plaintiff's experts are correct that the lack of propane was the result of Eastern Propane failing to fill the propane tank during its automatic delivery, then Eastern Propane is not protected by the terms of the contract as the propane was not 'exhausted' as required by the contract terms but was never delivered. If on

---

[4] While during oral argument, Great Northern indicated that it would be against public policy for Eastern Propane to contract around its own negligence, Great Northern did not address that theory in its pleadings. Similarly, Great Northern did not address Eastern Propane's theory that, under Massachusetts law governing sales contracts, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable[,]" Mass. Gen. Laws ch. 106, § 2-719(1)(a) and (3), and that given the sophistication of the Davises, and the simplicity of the Contract, the damage limitation was not unconscionable. See Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-94, 408 N.E.2d 1370, 1376-77 (1980) (discussing factors to consider in determining unconscionability). See Def. Mem. (Docket No. 32) at 3-4.

the other hand the defendant is correct that the depletion of the propane is the result of the Davis family somehow exhausting the propane supply then they may be protected." Pl. Mem. at 4. This argument is not persuasive. Giving the word "exhaustion" its ordinary meaning, in the context of the parties' Contract (that does not deal in any way with automatic delivery), this court finds that Eastern Propane is not contractually liable for damages incurred as a result of the propane running out.

Interpretation of a contract is ordinarily a question of law for the court. Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011). Moreover, it is up to the court to assess whether the contract is ambiguous. Barclays Bank PLC v. Poynter, 710 F.3d 16, 21 (1st Cir. 2013). Language is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Lass v. Bank of Am., N.A., 695 F.3d 129, 134 (1st Cir. 2012) (quoting Gemini Inv'rs Inc. v. AmeriPark, Inc., 643 F.3d 43, 52 (1st Cir. 2011) (additional citation omitted)). In determining whether a contract is ambiguous, the court must read the agreement "in a reasonable and practical way, consistent with its language, background, and purpose." Id. (quoting Bukuras v. Mueller Group, LLC, 592 F.3d 255, 262 (1st Cir. 2010) (additional citation omitted)).

"Contracts found free from ambiguity are interpreted according to their plain terms" construing all words according to "their usual and ordinary sense." Barclays Bank, 710 F.3d at 21 (quotations omitted). In construing the contract, the court must be "guided by 'the meaning of the terms of the writing in light of the circumstances.'" Kimmel v. Silverman, P.C. v. Porro, 53 F. Supp. 3d 325, 337 (D. Mass. 2014) (quoting A.J. Props., LLC v. Stanley Black & Decker, Inc., 972 F. Supp. 2d 68, 75 (D.Mass.2013) (additional citation omitted)). The court "must seek 'to

give effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible.'" Id. (citation omitted). "Summary judgment is appropriate when [the] plain terms unambiguously favor either side." Farmers Ins. Exchange, 632 F.3d at 784.

If the court determines that the contract at issue is ambiguous, it "is free to look to extrinsic evidence in order to give a reasonable construction in light of the intentions of the parties at the time of formation of the contract." President & Fellows of Harvard Coll. V. PECO Energy Co., 57 Mass. App. Ct. 888, 896, 787 N.E.2d 595, 601 (2003) (internal citation omitted). Under those circumstances, "summary judgment [will be] appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." Farmers Ins. Exchange, 632 F.3d at 784. "In the absence of fraud or mistake, 'an agreement is presumed to express the intent of the parties.'" Id. (quoting Fairfield 274–278 Clarendon Tr. v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992)).

In the instant case, this court finds the contract unambiguous, and that Eastern Propane is not contractually liable for damages that occur as a result of the gas tank running dry. Contrary to Great Northern's contention, there is nothing in the Contract that requires that the empty tank be caused by a change in the customer's usage requirements.

The parties do not dispute that the gas supply was "exhausted" in that the gas was used up and the tank was empty. Rather, Great Northern is arguing that the limitation on damages can only apply when the tank runs dry due to varying demands and fluctuations in use by the customer. However, the terms of the Contract do not impose such a requirement. The fact that customer demands may vary may have been a motivating factor for having the exclusion of

[10]

liability for consequential damages in the Contract, but there is nothing in the language of the Contract that can be read as limiting the exclusion to circumstances caused by the customer.[5]

Great Northern's contract interpretation is defeated by its own argument. Thus, Great Northern asserts as follows:

> Construing "exhaustion" to have a broader meaning would render illusory Eastern Propane's promise and agreement to deliver LP gas to the Property on an automatic or scheduled delivery basis. Under the definition of "exhaustion" proposed by defendant's motion for summary judgment, Eastern Propane could deliver any amount, or no amount, of LP gas to the Property, at its election, without consequence, even though Eastern Propane delivers gas as part of a scheduled or automatic delivery system specifically designed to relieve the customer of the obligation to monitor the amount of gas remaining and call Eastern to request a delivery. If Eastern Propane "automatically" determines how much gas to deliver, but "exhaustion" includes its own failure to deliver, then its promise to deliver gas on an automatic or scheduled basis is illusory.

Pl. Mem. at 12. The problem with this argument is that the Contract makes absolutely no mention of Eastern Propane's obligation to deliver gas on an automatic or scheduled basis. In fact, it makes no mention of Eastern Propane's obligation to deliver gas at all. This Contract apparently covers any situation where a homeowner obtains equipment and LP gas from Eastern Propane. There is nothing in the contractual limitation on damages that renders any other provision of the contract in any way illusory.

There are endless numbers of reasons why a gas supply may be exhausted. It could be a miscalculation by a homeowner, unexpected company in an occupied or unoccupied house

---

[5] This court finds instructive the fact that the Contract states that the limitation of liability is "in recognition of" the fact that depletion of the supply of gas will vary with usage demands, and is not "limited to" situations where usage demands varied. This "in recognition" language indicates an explanation for why Eastern Propane has taken the position that it "does not assume responsibility and is not accountable for the exhaustion of the LP Gas supply[.]" Def. Ex. C. It does not purport to state every reason why a gas supply may be "exhausted" (such as ruptured pipes where there is no potential liability on the part of Eastern Propane), nor does it purport to limit the denial of liability to only specific circumstances causing the gas tank to run dry.

(about which Eastern Propane could not be expected to have notice), a leaky pipe, or a downed tree blocking a driveway that prevents Eastern Propane from delivering gas, to name just a few. The Contract is clear – regardless of the reason, Eastern Propane is not liable for damages incurred as a result of such exhaustion.  As noted above, Great Northern has not disputed that such a limitation on liability is enforceable.  This court cannot read into the Contract provisions that simply do not exist.

Finally, the limitation for damage caused by exhaustion of propane does not render an automatic delivery obligation illusory.  Since there is no obligation on the part of the homeowner to keep Eastern Propane apprised of all uses of heat in the property, Eastern Propane cannot guarantee that gas will not be used up, regardless of the level of sophistication of its calculations.  By making it clear that Eastern Propane will not be liable if the gas tank runs dry, homeowners are advised to take other precautions if they are leaving their home vacant.  The Davis family apparently did so in the form of a caretaker, and an alarm system that may or may not have worked.  For all these reasons, Eastern Propane's motion for summary judgment as to Great Northern's contract claim is allowed.

### C.     Negligence

In Count I of its complaint, Great Northern alleges that Eastern Propane was negligent in the calculation of the amount of propane needed at the home and in failing to deliver an adequate supply of liquid propane, among other things. Compl. 17.  Eastern Propane has moved for summary judgment on the negligence claim on the grounds that where a contract governs the parties' obligations, the plaintiff has no cause of action in tort absent an independent duty imposed by law.  Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp.

278, 289 (D. Mass. 1987) (citation omitted).  It is well established that "failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made."  Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 368, 676 N.E.2d 821, 823 (1977).  For its part,  Great Northern points to cases finding a duty of care in connection with the delivery of gas due to the dangerous nature of the product.  See, e.g., Barbeau v. Buzzards Bay Gas Co., 308 Mass. 245, 247, 31 N.E.2d 522, 523 (1941) (defendant gas company found liable for gas explosion: the gas company "in the conduct of its business was bound to use reasonable care to prevent the escape of gas upon the premises of the plaintiff; and that degree of care, in view of the dangerous character of gas and its tendency to escape, means care commensurate with the danger that would probably result if such care were lacking."); Wolff v. Buzzards Bay Gas Co., 353 Mass. 57, 59, 228 N.E.2d 94, 96 (1967) (gas company liable for explosion when it failed to investigate a leak; "jury could have found that the defendant failed to employ the reasonable care required to prevent the escape of gas into the plaintiff's house"); DiPasquale v. Suburban Propane Ltd. P'ship, No. 11-CV-1539-F, 2014 WL 7463864, at *3 (Mass. Sup. Ct. Dec. 31, 2014) (motion for summary judgment denied on claim that supplier of propane to dryer was negligent when dryer exploded due to a leak); Powers v. Inhabitants of Wakefield, 231 Mass. 565, 566-67, 121 N.E. 408, 409 (1919) (supplier of gas liable for harm to occupants of house caused by escaping gas vapors).

Eastern Propane's motion for summary judgment on the negligence claim is denied.  As an initial matter, there is no contract governing the provision of gas to the property on an automatic basis, as detailed above.  Therefore, Eastern Propane's tort claim is not precluded by the parties' contractual arrangements.  Moreover, while it is not clear that the cases cited by

[13]

Great Northern establish a duty of care in the calculation of the amount of propane to be delivered as a matter of law,[6] there are facts from which the jury can find that Eastern Propane assumed the duty to exercise due care in calculating the amount of propane needed at the property and arranging for the delivery of the correct amount.  According to Great Northern, Eastern Propane designed an automatic delivery system on which it intended its customers to rely.  While Eastern Propane did not in any way guarantee that the house would never run out of gas, the jury should assess whether Eastern Propane was negligent in its calculations, or in arranging for delivery of the correct amount.

## IV. CONCLUSION

For all the reasons detailed herein, Eastern Propane's motion for summary judgment (Docket No. 32) is ALLOWED as to the claim of breach of contract (Count II) and DENIED as to the claim of negligence (Count I).

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[6] The cases all deal with the dangerous nature of leaking gas.  The instant case is not factually analogous.  Great Northern has not established that by merely selling gas used for heating, a company has a duty to the public to make sure that the gas never runs out because it is dangerous to be without heat.